**MICCOSUKEE TRIBE OF INDIANS OF FLORIDA, a federally-recognized Indian tribe, Plaintiff,**

v.

**UNITED STATES of America, U.S. Fish & Wildlife Service, et al., Defendants.**

**No. 05–23045–CIVMOORE.**

United States District Court, S.D. Florida.

May 12, 2006.

See also 420 F.Supp.2d 1324.

Kelly Sue Brooks, Lehtinen Vargas Reiner & Riedi, Miami, FL, for Plaintiff.

Mark A. Brown, United States Department of Justice Wildlife & Marine Resources Section, Washington, DC, for Defendants.

## ORDER

K. MICHAEL MOORE, District Judge.

**THIS CAUSE** came before the Court upon Federal Defendants' Memorandum in Support of Motion to Dismiss and for Expedited Consideration Thereof (DE # s 23, 24), and Federal Defendants' Second Motion to Dismiss and for Expedited Consideration Thereof (DE # 33).

**UPON CONSIDERATION** of the Motions, and being otherwise fully advised in the premises, the Court enters the following Order.

### I. Background

The facts of this case have already been extensively discussed in an earlier order. *See Miccosukee Tribe of Indians of Florida v. U.S.,* 420 F.Supp.2d 1324 (S.D.Fla. 2006). In brief, the Miccosukee Tribe of Indians ("Plaintiff" or "Tribe") seek redress for alleged environmental violations against a new defendant, the U.S. Fish & Wildlife Service ("FWS" or the "Service") among others. Specifically, the Plaintiff alleges that the Service violated the Endangered Species Act ("ESA"), the Administrative Procedures Act ("APA"), the National Environmental Policy Act ("NEPA") and the Indian Trust Doctrine in connection with its issuance of a Biological Opinion ("BO") in 1999, which was later amended in March, 2002. The Biological Opinions concerned an Interim operating Plan ("IOP") that the the U.S. Army Corps of Engineers (the "Corps") adopted to avoid jeopardizing the Cape Sable Seaside Sparrow until the completion of a water delivery project (the Modified Water Deliveries Project, or "MWD Project"). The Amended Biological Opinion concluded that the Corps' implementation of the IOP was not likely to jeopardize the continued existence of the Everglades Snail Kite and was not likely to adversely modi-

fy designated Snail Kite habitat. Plaintiff argues that these conclusions were wrong and that the Snail Kite and its habitat were damaged.

## II. Standard of Review

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States,* 734 F.2d 762, 765 (11th Cir.1984). On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *SEC v. ESM Group, Inc.,* 835 F.2d 270, 272 (11th Cir. 1988). Further, the Court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citations omitted); *South Fla. Water Mgmt. Dist. v. Montalvo,* 84 F.3d 402, 406 (11th Cir.1996). Specifically, "[i]t is a well-settled principle of law that a complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on *any* possible theory." *Bowers v. Hardwick,* 478 U.S. 186, 201–02, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) (Blackmun, J., dissenting) (quotations omitted); *see Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997). Nonetheless, to withstand a motion to dismiss, it is axiomatic that the complaint must allege facts sufficiently setting forth the essential elements of a cause of action.

## III. Discussion

Defendants first argue that Plaintiff lacks standing. In order to estab-lish standing, the plaintiffs must have suffered an injury in fact, i.e., the invasion of a legally protected interest which is concrete and particularized, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "Moreover, there must be some causal connection between the asserted injury and the challenged action, and the injury must be of the type likely to be redressed by a favorable decision." *See Gutherman v. 7–Eleven, Inc.,* 278 F.Supp.2d 1374, 1378 (S.D.Fla.2003) (citing *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 804, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)). In the context of cases alleging environmental violations, plaintiffs "adequately allege injury in fact when they aver they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." *Sierra Club v. Johnson,* 436 F.3d 1269, 1279 (11th Cir.2006) (quoting *Friends of the Earth v. Laidlaw Environmental Servs., Inc.,* 528 U.S. 167, 183, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)).

The Supreme Court has held that unlike a motion for summary judgment, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Bennett v. Spear,* 520 U.S. 154, 167–8, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). In keeping with this standard, the complaint alleges the requisite injury in fact. As the Complaint alleges:

- "These FWS demanded gate closings continue to this day and have caused, and continue to cause, sustained high water levels in WCA 3A that have resulted in cumulative irreparable harm to the

Tribe's culture and way of life, to tribal lands and natural resources in WCA 3A, to the Snail Kite and its critical habitat. Moreover, the gate closings adversely impact the promises made to the Miccosukee Tribe that these lands would be preserved in a natural state in perpetuity and that wildlife and their habitat would be preserved." Amended Compl. ¶ 24.

- "The second RPA has resulted in sustained high water in vast areas of Tribal Everglades in WCA 3A that has caused, and will continue to cause, cumulative irreparable harm to the Tribe's lands and tree islands in WCA 3A, the Tribal culture and way of life, the endangered Snail Kite and its critical habitat in WCA 3A and adversely impacts the promises made to the Miccosukee Tribe that these lands would be preserved in a natural state in perpetuity and that wildlife and their habitat would be preserved." Amended Compl. ¶ 31.

- "The Amended Biological Opinion and its RPA and Incidental Take Statement has caused, and will continue to cause, severe degradation of the Tribal Everglades in WCA 3A, including destruction of the tree islands and biodiversity, and irreversible ecological harm to the critical habitat of the endangered Snail Kite, as well as harm to the Tribe's entire culture and way of life through unacceptably and unnaturally sustained high water levels there." Amended Compl. ¶ 61.

Furthermore, Defendants' contention that FWS's actions are not "fairly traceable" to the harm alleged is without merit. The Supreme Court's holding in *Bennett v. Spear* is directly on point. In that case, the Plaintiffs challenged the biological opinion issued by FWS for the Bureau of Reclamation. 520 U.S. at 159, 117 S.Ct. 1154. The Bureau operated the project at issue in compliance with the biological opinion, leading to increased water levels and alleged harm to the Plaintiffs. *Id.* The Government argued, as it does here, that the "action agency" (the Army Corps of Engineers) "retains ultimate responsibility for determining whether and how a proposed action shall go forward." *Id* at 168, 117 S.Ct. 1154. Similarly, the Defendants here claim that any injuries "are caused by the actions of the Corps, and not by any actions of FWS" because "the ultimate decision whether to proceed with the proposed action is committed to the discretion of the action agency." Def. Second Motion to Dismiss, at 3. As the Supreme Court noted, this "wrongly equates injury 'fairly traceable' to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation. While ... it does not suffice if the injury complained of is 'the result of the *independent* action of some third party not before the court' ... that does not exclude injury produced by determinative or coercive effect upon the action of someone else." *Id.* at 168–9, 117 S.Ct. 1154. And, the FWS's Biological Opinion is certainly "coercive." While "[t]he action agency is technically free to disregard the Biological Opinion and proceed with its proposed action, ... it does so at its own peril.... The Service itself is, to put it mildly, keenly aware of the virtually determinative effect of its biological opinions." *Id.* at 170, 117 S.Ct. 1154.

Defendants' attempt to distinguish *Bennett* is not persuasive. Defendants argue that the chain of causation between the FWS's issuance of the Biological Opinion and the injury alleged by the Tribe is overextended. The Court disagrees: FWS issued a biological opinion, which the Corps adopted and the Plaintiff was allegedly harmed by its implementation. This is certainly sufficient to satisfy the "fairly traceable" requirement, especially considering Plaintiff's "modest" burden at this

stage of the litigation. *Bennett,* 520 U.S. at 171, 117 S.Ct. 1154.

### A. Count II

■ In Count II, the Tribe alleges that pursuant to Section 7 of the ESA, the Secretary of the Interior (the "Secretary") is required to reinitiate consultation after the Secretary learned that "the premises upon which the Secretary based his findings in a Biological Opinion concerning an endangered species are flawed ...." Amended Compl., ¶ 116. The Defendants respond that the Army Corps of Engineers—not FWS—has primary responsibility for reinitiating consultation. Thus, as the Corps is the "action agency" and FWS's role is "purely advisory," the Plaintiff cannot sustain a claim against FWS for its failure to reinitiate consultation. Def. Motion to Dismiss, at 20; Def. Second Motion to Dismiss, at 4–5.

First, the Court must determine whether FWS could conceivably be held responsible for failure to encourage reinitiation of the consultation process. The Tribe points out that language in the Federal Regulations indicate that FWS bears at least some responsibility for implementing the charge of Section 7 of the ESA. The Federal Regulations state that "[r]einitiation of formal consultation is required and shall be requested by the Federal Agency or by the [U.S. Fish & Wildlife] Service ..." if certain conditions are met. 50 C.F.R. § 402.16. The Federal Regulations further state that if the Corps fails in its obligation to reinitiate consultation, the Service "should send a letter clearly outlining the change in circumstances supporting the need for reinitiation." 50 C.F.R. § 402.16. At least implicitly, one Judge in the Southern District of Florida agrees. *See Sierra Club v. Flowers,* 2006 WL 760489 (S.D.Fla. Mar. 22, 2006). In that case, Judge Hoeveler determined that FWS violated the

ESA when it concurred with the conclusion of the Army Corps of Engineers without considering certain effects on the wood stork. *Id.* at *70. Accordingly, the Court remanded the case to FWS "to permit the agency to consult formally with the Corps, and to develop a BO that addresses all of the relevant factors as to all of the pertinent species." *Id.; see also Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.,* 378 F.3d 1059, 1077 (9th Cir.2004) ("If the data is new and the new data may affect the jeopardy or critical habitat analysis, then the FWS was obligated to reinitiate consultation pursuant to 50 C.F.R. § 402.16"). Thus, the Court finds that FWS may be held accountable for its failure to reinitiate consultation with the Corps, even if the Corps bears ultimate responsibility for following through on the consultation and the extent of the FWS's failure is its decision not to send a letter to the Corps explaining the need for reinitiation of consultation.

The Defendants also suggest that this Court's holding in *Miccosukee Tribe of Indians v. U.S. Army Corps of Engineers, et al.,* Case. No. 02–22778–CIV–MOORE somehow precludes the instant claim. In that case, the Court held that the Army Corps of Engineers was not required to reinitiate consultation, and did not violate the ESA for failure to do so. *See Miccosukee Tribe of Indians v. U.S. Army Corps of Engineers, et al.,* 420 F.Supp.2d 1324, 1337 (S.D.Fla.2006). Specifically, the Court found that the Plaintiff failed to meet its burden in demonstrating that the Corps did not consider new or pertinent information, or that this information affected the Snail Kite in a manner or to an extent not previously considered. *Id.* Although the claims are strikingly similar, the Court will not hold at this stage that simply because it did not find the Corps' failure to reinitiate consultation to be arbitrary and capricious, the same is true with

respect to the Service. The Court reached that conclusion in an earlier case only on motions for summary judgment—the Defendants' burden here is far greater. Furthermore, dismissal at this stage would deprive the Plaintiff of the opportunity to conduct discovery specifically geared toward the Service. Indeed, it is conceivable that the expertise (and corresponding responsibility) of the Service could render its failure to reinitiate consultation improper, even where the Court has previously found that the Corps did not act improperly in failing to reinitiate consultation.[1]

### B. Count III

Count III alleges that Defendants violated Section 9 of the ESA. Section 9 of the ESA prohibits any person to "take" an endangered species of fish or wildlife. *See* 16 U.S.C. § 1538(a)(1)(B). Under the "citizen suit" provision of the ESA, an injunction may be issued against "any person, including the United States and any other governmental instrumentality or agency" who engages in an unlawful taking. 16 U.S.C. § 1540(g)(1)(A).

██ The Defendants argue that "an action does not lie against FWS for an alleged violation of ESA Section 9 where, as here, FWS is acting in its role as a consulting agency." Def. Second Motion to Dismiss, at 6. Plaintiff argues that FWS was behaving as a *de facto* action agency because "the damage causing the take was adopted by FWS itself as its RPA and ITS[2] in the Amended Biological Opinion." Pl. Opp. at 14. Assuming that the FWS here is a "consulting agency," rather than an action agency, the Supreme Court agrees that it could not be held responsible for "maladministration" of its Amended BO or ITS. *See Bennett v. Spear,* 520 U.S.

154, 173, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) ("The Government contends that the Secretary's conduct in implementing or enforcing the ESA is not 'a violation' of the ESA within the meaning of [the citizen suit] provision ... We agree"). With respect to the issuance of the biological opinions, the Court finds that FWS was acting in its capacity as a "consulting agency," and not an "action agency." *See e.g., Environmental Protection Information Center v. Simpson Timber Co.,* 255 F.3d 1073, 1079 (9th Cir.2001) (interpreting *Bennett v. Spear,* "the FWS, as the consultation agency, issued a Biological Opinion allowing the Bureau of Reclamation, as the action agency, to undertake a water reclamation project ...."); *Florida Keys Citizens Coalition, Inc. v. U.S. Army Corps of Engineers,* 374 F.Supp.2d 1116, 1160 (S.D.Fla.2005) ("In order to achieve [the ESA's] goal[s], the ESA requires the action agency to consult with the FWS ... whenever a federal action may affect these listed species. This consultation is in the form of a Biological Opinion, by which the FWS .... advise[s] the action agency whether these listed species are impacted by the proposed action."). As the Defendants point out, Plaintiff's remedy lies not in the ESA, but in the APA. *See Bennett v. Spear,* 520 U.S. at 175, 117 S.Ct. 1154 ("The APA, by its terms, provides a right to judicial review of all 'final agency action for which there is no other adequate remedy in a court'") (internal citations omitted). Accordingly, Count III should be dismissed.

### C. Count IV

In Count IV, the Plaintiff alleges a violation of the National Environmental Policy Act ("NEPA"). The Tribe specifically al-

---

1. The Defendants, of course, will have an opportunity to raise this argument again in a motion for summary judgment.

2. Incidental Take Statement.

leges that FWS violated NEPA by failing to issue an Environmental Impact Statement ("EIS") on the Incidental Take Statement that FWS issued. Amended Compl., ¶ 133. Moreover, "[t]he Biological Opinion and its RPA and ITS results in the degradation of approximately 88,300 acres (10.5%) of designated Snail Kite critical habitat and is a major federal action significantly affecting the quality of the human environment, within NEPA." *Id.* at ¶ 139.

■ NEPA requires the issuance of an EIS for "all major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). As the Defendants point out, however, any physical impacts on the environment result from actions taken by the action agency (the Corps) in response to the ITS. *See* 50 C.F.R. § 402.15(a) ("the Federal agency shall determine whether and in what manner to proceed with the action in light of its section 7 obligations and the Service's biological opinion"). For this reason, the Corps was required to, and indeed did undertake its own NEPA review. The Court agrees that to hold FWS to an equivalent NEPA requirement would be redundant. As the Middle District of Florida recently held: "[T]he FWS is not required to complete an EIS as the cooperating agency under NEPA, or in its role as consulting agency under ESA. It is the responsibility of the action agency preparing the … EIS to consider all reasonable alternatives …. If [FWS] were required to perform NEPA analysis on each request, not only would it be redundant, since the agency requesting consultation is doing a NEPA analysis, it would also strain limited agency resources creating significant inefficiency in complying with the regulatory regime." *P'ship for a Sustainable Future, Inc., et al. v. U.S. Fish & Wildlife Serv.,* Case No. 6:02–414–CIV

(M.D.Fla. July 12, 2002), at 20, 23. *See also Westlands Water Dist. v. U.S. Dep't of Interior,* 275 F.Supp.2d 1157, 1221 (E.D.Cal.2002) ("FWS is not required to file NEPA documents every time it issues a biological opinion or an incidental take statement"). Although the Plaintiff insists that FWS was obligated to complete an EIS, it cited to no law for that proposition. In *Catron County Bd. of Commissioners v. U.S. Fish & Wildlife Serv.,* the Court of Appeals for the Tenth Circuit held that FWS was required to perform a NEPA analysis when FWS's designation of property as "critical habitat" had a direct legal effect on property owners—in that case FWS was the effective "action agency," and no other agency had the responsibility to conduct an EIS. 75 F.3d 1429, 1437 (10th Cir.1996). Similarly, the Ninth Circuit held that the National Marine Fisheries Service ("NMFS") was required to comply with NEPA when it issued the ITS after noting that "in this case" the ITS is "functionally equivalent" to a permit. *Ramsey v. Kantor,* 96 F.3d 434, 444 (9th Cir.1996). There was also no action agency in that case that was responsible for NEPA compliance. And, as the Defendants point out, subsequent to *Ramsey,* district courts have noted that "[t]he limiting language contained in [*Ramsey*] evinces that it did not intend [FWS] to file NEPA documents every time it issues an incidental take statement to a federal agency." *Southwest Center for Biological Diversity v. Klasse,* Case No. 97–CV–1969 (E.D.Cal. Mar. 4, 1998), at 16. To expect or require FWS to submit its own EIS, in spite of the fact that it was not the action agency and that the Corps had already issued one is nonsensical and an utter waste of government resources. *See Sierra Club v. U.S. Army Corps of Engineers,* 295 F.3d 1209, 1215 (11th Cir.2002) ("Agencies are not required to duplicate

the work done by another federal agency which also has jurisdiction over a project").

### D. Count VI

█ Count VI alleges that the Defendants have violated the Indian Trust Doctrine, as reflected in the Indian Land Claims Settlement Act of 1982 (the "1982 Act") and Department of the Interior Secretarial Order #3206. *See* Amended Compl. ¶¶ 153–5. The Tribe argues that it possesses "clear and legally-cognizable property interests with associated rights protected" based on the provisions of the 1982 Act. Pl. Opp. at 17. This Court has repeatedly and unequivocally held that "despite the general trust obligation of the United States to Native Americans, the government assumes no specific duties to Indian tribes beyond those found in applicable statutes, regulations, treaties, or other agreements." *Miccosukee Tribe of Indians v. United States,* 980 F.Supp. 448, 461 (S.D.Fla.1997). Furthermore, the 1982 Act merely authorizes the Secretary of the Interior to accept title to lands located in WCA 3A "to be held in trust" for the benefit of the Tribe. Not only does it fail to establish an enforceable trust obligation, but it affirmatively denies the Tribe the right to "interfere" with the actions of the Corps with respect to the water levels in WCA 3A. *See id.* at 461–2. Finally, the Defendants correctly note that DOI Secretarial Order #3206 is "for guidance within the Department only," and does not create any substantive trust obligation. Def. Motion to Dismiss, at 18. Plaintiff's arguments to the contrary are completely unavailing. Because the Tribe has failed to show that there is any trust obligation in either the Indian Trust Doctrine, the 1982 Act or the DOI Secretarial Order, the Plaintiff has failed to state a claim with respect to Count VI. While the Court does not dispute Plaintiff's right to occupy or use WCA 3A, this does not, as

the Defendants correctly note, "translate into a generalized right to sue" through the invocation of the Indian Trust Doctrine. Def. Reply at 9.

### IV. Conclusion

Based on the foregoing, it is ORDERED AND ADJUDGED that Defendants' Motion to Dismiss (DE #24) and Supplemental Motion to Dismiss (DE #33) are GRANTED IN PART. Counts III, IV and VI are hereby DISMISSED with prejudice.