**MICCOSUKEE TRIBE OF INDIANS
OF FLORIDA, Plaintiff,**

v.

**UNITED STATES of America
et al., Defendants.**

No. 08–21703–CIV.

United States District Court,
S.D. Florida.

Sept. 2, 2008.

Claudio Riedi, Dexter Wayne Lehtinen, Kelly Brooks Smith, Lehtinen Riedi Brooks Moncarz, P.A., Miami, FL, for Plaintiff.

Edward S. Geldermann, United States Attorney's Office, Miami, FL, Mark A.

Brown, United States Department of Justice, Washington, DC, for Defendants.

### ORDER ON MOTION TO DISMISS

URSULA UNGARO, District Judge.

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss, filed on July 25, 2008 (D.E.15). Plaintiff filed its Response in Opposition on August 11, 2008 (D.E.18). Defendants filed their Reply in further support of their Motion on August 19, 2008 (D.E.22). As such, the Motion is now ripe for adjudication.

THE COURT has considered the Motion and the pertinent portions of the record and is otherwise fully advised in the premises. By way of background, this case arises out of the Tamiami Trail Modification Project (the "TTMP"), which provides for the relocation of a one mile portion of the Tamiami Trail, also known as U.S. Highway 41, from its current location outside Everglades National Park (the "Park") into the Park. (D.E. 3 at 4; D.E. 14 at 3.) Everglades National Park, which incorporates a portion of the complex and fragile ecosystem known as the Everglades, has been Plaintiff's home for generations. (D.E. 3 at 6.) Plaintiff's tribal members have customary use and occupancy rights in certain areas of the Park, including an area that would be directly affected by the TTMP. (D.E. 3 at 6.)

In light of the negative effects that the Tamiami Trail and other man-made projects have had on the natural water flows in the Everglades, in 1989 Congress enacted the Everglades National Park Protection and Expansion Act (the "ENPPE Act"), Pub.L. No. 101–229, 103 Stat. 1946, 16 U.S.C. § 410r–8. (D.E. 14 at 3.) The ENPPE Act authorized the U.S. Department of the Interior ("USDOI") to acquire additional lands for an expansion of the Park, including the portion of the Park at issue in this action. (D.E. 14 at 3.) The ENPPE Act also directed the Secretaries of the Army and the Interior to take steps to improve water deliveries into the Park and to restore the natural hydrological conditions within the Park. 16 U.S.C. § 410r–8(a)(1). Congress further directed that such modifications be consistent with the General Design Memorandum (the "GDM") to be prepared by the Jacksonville District entitled "Modified Water Deliveries to Everglades National Park." Id. at § 410r–8(a)(2). The GDM, which was released in 1992, proposed increasing water flow into the L–29 Canal, not realizing that the existing culverts under the Tamiami Trail roadway would be inadequate to deliver the increased volume. (See LRREA at 1–7, 1–8.) Once the culvert-related problem was discovered in the late 1990s, the U.S. Army Corps of Engineers (the "Corps") had to come up with an alternative method for increasing water flow.

After much investigation, analysis, and Congressional input regarding proposed methods for modifying water deliveries to the Park (see D.E. 14 at 4–6), in June 2008, the Corps issued its *Modified Water Deliveries to Everglades National Park Tamiami Trail Modifications Final Limited Reevaluation Report and Environmental Assessment* (the "LRREA"). (See D.E. 3, Ex. A.) The LRREA, which includes a Finding of No Significant Impact, proposes to relocate a one mile portion of the Tamiami Trial, currently running outside the Park, and replace it with a newly constructed bridge on federally-owned land that is part of the Park. (D.E. 3 at 4.) The narrow strip of land needed for the bridge runs parallel to the existing Tamiami Trail road system, a mere 40 feet to the south. (D.E. 14 at 7.)

However, in order to complete the TTMP, the portions of the Park involved would need to be conveyed via Highway Easement Deed ("HED") from the USDOI to the Florida Department of Transportation ("FDOT") so that the Corps can construct and operate the bridge. (D.E. 3 at 2.) Because USDOI currently does not have direct statutory authority to convey the necessary strip of land at the northern edge of the Park, the USDOI's National Park Service ("NPS") in 2006 requested assistance from the Department of Transportation (the "DOT")'s Federal Highway Administration (the "FHWA"), which has authority to act as a land transfer agent, to convey highway easements to FDOT. (D.E. 14 at 7.) NPS made such HED request pursuant to 23 U.S.C. § 317, explaining that the transfer would help "to implement the beneficial aspects of relocation and modification of the road in order to promote the increased flow of water into the [Park]." (*See* D.E. 14–6 at 1–2.) In the same letter, NPS also raised the issue of the applicability of Section 4(f)[1] of the DOT Act to the TTMP, asking for the FHWA's opinion on NPS's preliminary determination that Section 4(f) did not apply to the TTMP because the TTMP is not a transportation project. (*See* D.E. 14–6 at 2.) By letter dated October 20, 2006, FHWA's Florida Division concluded that "[t]he proposed project is an environmental restoration project and the [FHWA's] involvement in the transfer of property between another Federal Agency and [FDOT] would not trigger the applicability of Section 4(f)." (D.E.14–7.) The Corps's land transfer application, submitted on behalf of FDOT, remains pending before NPS as of July 21, 2008. (D.E. 14 at 8.)

Section 4(f) provides, in pertinent part, that the Secretary of the DOT "may ap-prove a transportation program or project ... requiring the use of publicly owned land of a public park, recreation area, or wildlife or waterfowl refuge of national, State, or local significance ... only if (1) there is no prudent or feasible alternative to using that land; and (2) the program or project includes all possible planning to minimize harm to the park, recreation area, wildlife and waterfowl refuge, or historic site from the use." 49 U.S.C. 303(c). Plaintiff contends that because the TTMP is a transportation project, Section 4(f) applies, requiring the Secretary of the DOT to comply with Section 4(f) and undertake the necessary evaluation. (Compl.¶¶ 18–19.) It is undisputed that no Section 4(f) review has been completed in regards to the TTMP. (D.E. 3 at 10; *see generally* D.E. 14.) As a result, Plaintiff argues, Defendant Mary Peters, as Secretary of the DOT, has violated Section 4(f). Plaintiff's Complaint contains two claims: a request for a Writ of Mandamus and a request for declaratory and injunctive relief. (*See* Compl. ¶¶ 26–42.)

In their Motion, Defendants argue that Plaintiff's claims should be dismissed (1) for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) and/or (2) for failure to state a claim upon which relief may be granted under Fed.R.Civ.P. 12(b)(6). As for the former argument, the Court first notes that the plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The Court also notes that Defendants are making a facial attack on the Complaint, contending that taking the allegations as true, this Court lacks subject matter juris-

---

1. Section 4(f) of the Department of Transportation Act, 49 U.S.C. § 1653(f), was repealed in 1983 but was recodified without substantial change at 49 U.S.C. § 303.

diction over the dispute as framed by the pleadings. A Rule 12(b)(1) motion may be in the form of a "facial attack" on the complaint, which "requires the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d ·1525, 1529 (11th Cir.1990) (citations omitted).[2]

Defendants argue that the Court lacks subject matter jurisdiction because the Complaint fails to allege facts which, taken as true, demonstrate the Plaintiff tribe's standing to maintain the action. Article III of the United States Constitution limits the jurisdiction of the federal courts to actual "cases" and "controversies." *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). A party has standing within the meaning of Article III when it establishes three elements: (1) injury, (2) causation, and (3) redressability. *Defenders of Wildlife*, 504 U.S. at 560–61, 112 S.Ct. 2130. The injury must be an injury in fact, i.e., the invasion of a legally protected interest which is concrete and particularized, not conjectural or hypothetical. *Id.* at 560, 112 S.Ct. 2130. "Moreover, there must be some causal connection between the asserted injury and the challenged action, and the injury must be of the type likely to be redressed by a favorable decision." *Gutherman v. 7–Eleven, Inc.*, 278 F.Supp.2d 1374, 1378 (S.D.Fla.2003) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)). In the context of cases alleging environmental violations, plaintiffs "adequately allege injury in fact when they aver they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." *Sierra Club v. Johnson*, 436 F.3d 1269, 1279 (11th Cir.2006) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.*, 528 U.S. 167, 183, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). Unless a party can meet these standing requirements, a federal court has no jurisdiction to hear the case. Additionally, the Supreme Court has held that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that the general allegations embrace those specific facts that are necessary to support the claim.'" *Bennett v. Spear*, 520 U.S. 154, 167–68, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (quoting *Defenders of Wildlife*, 504 U.S. at 561, 112 S.Ct. 2130). ·

Defendants contend that the Complaint fails to meet the first standing element (injury) because Plaintiff has failed to allege injuries to its own proprietary[3]

---

**2.** Or, the motion may take the form of a "factual attack," which challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Dunbar*, 919 F.2d at 1529. Because a factual Rule 12(b)(1) motion challenges the trial court's power to hear the claim, the court must closely examine the plaintiff's factual allegations and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* The court is not limited to the allegations contained in the complaint, and it may consider materials outside the pleadings to determine whether it has jurisdiction. *Id.* Here, Defendants assert that Plaintiff's Complaint is facially defective. (Defs.' Mot. at 2.)

**3.** In its Response, Plaintiff appears to have misinterpreted Defendants' arguments regarding proprietary interests as contending that Plaintiff lacks standing because it does not own the portion of the Park where the proposed construction would take place. (*See* Pl.'s Resp. 5.) The Court, however, reads

interests or to the interests of any of its individual members. (Defs.' Mot. 7.) The Court agrees. While Plaintiff alleges in the Complaint that (1) it has resided for centuries and continues to reside in the Park in the Miccosukee Reserved Area; (2) the Park is integral to its culture, religion, identity, and way of life; (3) its members use the Everglades, including the Park, for numerous purposes; (4) it has traditional use and occupancy rights in the Park; (5) the TTMP will incorporate statutorily protected parts of the Park; and (6) it will suffer irreparable harm if the portions of the Park which have been used by Plaintiff since times immemorial and which have been set aside for the use and enjoyment of Plaintiff and others are destroyed, such claims do not establish that Plaintiff will suffer a "concrete and particularized" harm. *See Defenders of Wildlife*, 504 U.S. at 560, 112 S.Ct. 2130. In order to properly allege a "concrete and particularized" harm in an environmental impact case, a plaintiff must, at a minimum, provide facts that would tend to show that such pro-

posed environmental change would (1) impact him personally, either because he uses or resides very close to the affected area, or (2) adversely impact the environment where he lives. *See Johnson,* 436 F.3d at 1279; *see also Friends of the Earth,* 528 U.S. at 183, 120 S.Ct. 693 ("We have held that environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." (citing *Sierra Club v. Morton,* 405 U.S. 727, 735, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972))); *see also Bennett,* 520 U.S. at 168, 117 S.Ct. 1154 (finding standing where the proposed action would reduce the amount of water available to plaintiffs). The Complaint is completely devoid of any mention that any member of Plaintiff tribe either resides near, utilizes, visits, hunts in, or comes into contact in any way with the portion of the Park that would be conveyed by the DOT as part of the TTMP.[4] Additionally, the Complaint does not directly or even imply

"proprietary interests" to refer to portions of the Park that Plaintiff tribe or its members actually use, interact with, or reside near.

4. Plaintiff appears to interpret *Bennett* as elucidating a different "standard" for standing at the motion to dismiss and summary judgment stages. (*See* Pl.'s Resp. 2 ("Many of the cases Defendants rely on are at the summary judgment stage, where standards are different ... [and] which involve a different, and higher, standing threshold than a motion to dismiss. No requirement of specificity exists at the motion to dismiss stage.") (citations omitted).) However, *Bennett,* citing *Defenders of Wildlife* and *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 886–89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), merely explains that in cases involving environmentally-related actions, a plaintiff at the motion to dismiss stage does not need to specify the exact adverse effects such an action would have on him, for general allegations of adverse effects suffice. *See Bennett,* 520 U.S. at 168, 117 S.Ct. 1154 ("Given peti-

tioners' allegation that the amount of available water will be reduced and that they will be adversely affected thereby, it is easy to presume specific facts under which petitioners will be injured—for example, the Bureau's distribution of the reduction pro rata among its customers. The Complaint alleges the requisite injury in fact.") In order to survive a motion to dismiss, though, a complaint still must include general allegations of an injury in fact. Under the facts alleged in Plaintiff's Complaint, it is not "easy to presume specific facts under which petitioners will be injured," *Bennett,* 520 U.S. at 168, 117 S.Ct. 1154, for Plaintiff have failed to allege either a present connection to or use of the area in which the proposed construction would take place or how the proposed construction would adversely impact the areas in which Plaintiff lives or uses.

that the TTMP would adversely impact the environment in the areas in which Plaintiff lives or that it uses. As such, Plaintiff has failed to adequately allege Article III standing and this case must be dismissed.

■ Plaintiff's argument that it has special Congressional standing is without merit. While it is true that Plaintiff tribe and its members have a legal right to use and occupy the Park, such right alone does not create standing. "The actual or threatened injury required by Art. III may exist solely by virtue or 'statutes creating legal rights, the invasion of which creates standing....'" *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (citations omitted). However, as *Warth* explains, "the statutory question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." The legislation that created the Park and acknowledged Plaintiff's existing rights to the land did not explicitly provide Plaintiff tribe with a statutory right to seek judicial review of any proposed governmental action that would in any way affect the Park or Plaintiff's use or occupancy of its lands, *see* 16 U.S.C. §§ 410–410c, and the Court is not aware of any prior decision that has found Plaintiff tribe to have standing on such basis. The fact that Congress has acknowledged Plaintiff's use and occupancy rights to the Park is simply irrelevant to this analysis.

■ Plaintiff also seems to suggest that it has standing in the instant action because other courts have previously found that it satisfied standing requirements when challenging agency action or inaction that had effects on the environment in the

Park. (*See* Pl.'s Resp. 4.) However, a court's previous finding of standing in a separate matter is irrelevant without an examination of the specific underlying facts, for the standing inquiry requires a thorough examination of the allegations in a complaint to determine whether the plaintiff is entitled to an adjudication of the particular claims asserted in such complaint. *See DiMaio v. Democratic Nat. Committee*, 520 F.3d 1299, 1301 (11th Cir. 2008). The cases in which Plaintiff has been found to have standing are distinguishable because such cases involved claims that the agency action or inaction directly impacted the environment in portions of the Park that Plaintiff tribe actually used. *See Miccosukee v. U.S.*, 430 F.Supp.2d 1328, 1331–32 (S.D.Fla.2006) (finding standing where plaintiff alleged that agency action could adversely affect water levels in area of the Park used by plaintiff for cultural purposes); *see also Miccosukee v. U.S.*, 6 F.Supp.2d 1346, 1348 (S.D.Fla.1998) (finding standing where agency action would allow polluted water into plaintiff's living areas); *see also Miccosukee v. U.S.*, 420 F.Supp.2d 1324 (S.D.Fla.2006) (no standing analysis); *see also Miccosukee v. Southern Everglades Restoration Alliance*, 304 F.3d 1076, 1080–81 (11th Cir.2002) (finding standing where defendant's action had allegedly damaged all tribal lands by delaying agency action).

■ Plaintiff's arguments regarding procedural standing are similarly unavailing. (*See* Pl.'s Resp. 6–7.) While it is true that in cases of alleged procedural harm, such as this one, a plaintiff can assert his procedural rights without meeting all the normal standards for redressability and immediacy, a plaintiff must still claim an injury to a concrete interest separate from the alleged procedural error. *See Defend-*

*ers of Wildlife,* 504 U.S. at 572 n. 7, 112 S.Ct. 2130. Again, Plaintiff tribe would have to allege that its members own, live near, or use the affected property but have failed to do so and its failure is fatal. *Cf. Nulankeyutmonen Nkihtaqmikon v. Impson,* 503 F.3d 18, 27 (1st Cir.2007) (finding a concrete and particularized interest where the plaintiff tribe lived very near the area where the proposed natural gas terminal would be constructed and used the land and surrounding waters for a variety of ceremonial and community purposes); *cf. also Defenders of Wildlife,* 504 U.S. at 572 n. 7, 112 S.Ct. 2130 (explaining that individual living adjacent to the site of a proposed dam would have standing); *cf. also Dubois v. U.S. Dept. of Agriculture,* 102 F.3d 1273, 1282–83 (1st Cir.1996) (finding sufficient interest where litigant regularly visited and "engaged in recreational

activities" in the subject area); *cf. also Ashley Creek Phosphate Co. v. Norton,* 420 F.3d 934, 938 (9th Cir.2005) ("[P]laintiffs who use the area threatened by the proposed action or who own land near the site of a proposed action have little difficulty establishing a concrete interest."). It is hereby

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss (D.E.15) is GRANTED. This cause is DISMISSED WITHOUT PREJUDICE.[5] Plaintiff SHALL, if it so desires, file an Amended Complaint which adequately alleges standing within ten (10) days of the date of this Order. It is further

ORDERED AND ADJUDGED that Plaintiff's Motion to Strike (D.E.23) is DENIED AS MOOT, as the Court has ignored any arguments made by Defendants'

---

5. Because the Court is dismissing the Complaint for lack of standing, it need not reach Defendants' alternative arguments for dismissal. However, the Court notes that Count I fails to state a claim upon which relief may be granted because mandamus relief is precluded where another adequate remedy is available. *See Cash v. Barnhart,* 327 F.3d 1252, 1258 (11th Cir.2003). In this case, Plaintiff has an adequate statutory remedy under the Administrative Procedure Act ("APA"), which specifically provides relief for agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1). Plaintiff is correct that mandamus jurisdiction is coextensive with the remedies available under the APA where a plaintiff seeks to compel agency action, not to direct the exercise of judgment or discretion. (*See* Pl.'s Resp. 11–12) (citing *Grinberg v. Swacina,* 478 F.Supp.2d 1350, 1354 (S.D.Fla.2007).) However, unlike *Grinberg,* wherein the plaintiff sought to compel agency adjudication of their applications for adjustment of immigration status—an action that must be taken with respect to every application—the instant case involves Defendant Secretary's exercise of judgment or discretion with regard to whether a Section 4(f) analysis needs to be completed for the TTMP. *See, e.g., City of Dania Beach, Fla. v. F.A.A.,* 485 F.3d

1181, 1191 (D.C.Cir.2007) ("[I]t is the agency's responsibility to determine in the first instance whether an action constitutes a 'transportation project ....' ") (citations omitted). As such, mandamus jurisdiction is not coextensive with the APA here and Count I fails to state a claim upon which relief may be granted. *See Grinberg,* 478 F.Supp.2d at 1354.

Defendants' Fed.R.Civ.P. 12(b)(6) arguments with respect to Count II—that the TTMP is not a transportation project and, thus, Defendant Secretary had no duty to undertake a Section 4(f) analysis—fail though, because such arguments prematurely attempt to address the merits of Plaintiff's claim. The APA charges the Court with determining whether Defendants' decision not to complete a Section 4(f) analysis was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In the Complaint, Plaintiff has adequately alleged that Defendants' decision regarding the Section 4(f) analysis was arbitrary and capricious (Compl.¶ 36), which is all that is necessary at the motion to dismiss stage, especially when the administrative record has not yet been filed.

in their Reply that exceed the scope of the issues raised in the Motion and the Response.

DONE AND ORDERED.